## GORDON et al. v. HAWKINS et al.

No. 4166.

Court of Civil Appeals of Texas. Amarillo.

Nov. 22, 1933.

Rehearing Denied Dec. 20, 1933.

C. C. Small, of Amarillo, and Tatum & Strong, of Dalhart, for appellants.

B. N. Richards and Harry Schultz, both of Dalhart, for appellees.

MARTIN, Justice.

Thirty-one persons, describing themselves as "the constituent members of Dalhart Lodge No. 633, Brotherhood of Railroad Trainmen," filed a petition for injunction against the Grand Lodge Brotherhood of Railroad Trainmen, the Chicago, Rock Island & Pacific Railway Company, the Chicago, Rock Island & Gulf Railway Company, and B. K. Gordon, Guy Bennett, H. G. Hamrick, and J. W. Vaught, the last four described as "members of Roswell Lodge No. 608, Brotherhood of Railroad Trainmen," all residents of Potter county, Tex. After a hearing, the district court of Dallam county granted a temporary injunction, the nature of which more fully appears hereafter. Some few months later the four individual defendants, who did not appear at the aforesaid hearing, and the Grand Lodge Brotherhood of Railroad Trainmen, filed a motion to dissolve said temporary injunction, which was overruled and from which order the above movants appealed to this court. Only the sufficiency of the allegations of relators' said petition to support the order for a temporary injunction is involved on this appeal. The facts alleged therein which form a sufficient background for a proper understanding of the law points discussed are, in substance, as follows: The two railroad companies on and prior to the controversy herein owned and operated a line of railroad extending in a southwesterly direction from Kansas City, in and through Liberal, Kan., Dalhart, Tex., and Tucumcari, N. M., and another such line extending easterly from Tucumcari in and through Amarillo, Tex., to Sayre, Okl. The first-named railroad (called herein the Pacific Company) is a foreign corporation whose lines are entirely without the state, and the second (called herein the Gulf Company) is a domestic corporation whose lines are entirely within the state. Prior to August, 1929, a new line of railroad was constructed from a connection at Amarillo with said Gulf Company northerly to a connection with said Pacific Company at Liberal, Kan., a distance of approximately 151 miles, thus forming roughly a right angle triangle—Liberal to Tucumcari to Amarillo to Liberal. At about the same time there was constructed a line about 62 miles long from Dalhart eastward to Morse, located on the east leg of said triangle. The line from Amarillo to Liberal is known in this record as the Amarillo and Canadian river line, or the A. C. R. line. When the new lines had reached the operating stage, there immediately arose a controversy between the members of the Dalhart Lodge Brotherhood of Railroad Trainmen and those of the Amarillo Lodge concerning their respective seniority rights on the A. C. R. line. The former claimed that, since said line entered their seniority district, they were entitled to 50 per cent. seniority rights, and the latter made

claim to 100 per cent. upon the basis that such line operated from their home town and was within their seniority district. An effort to compromise and settle the controversy proved futile. Whereupon the railroad company took action respecting which it is alleged: "The railroad management—announced— and also notified said members by letters, that it would operate and had already begun the operation of said line, and would employ, and was then employing, the men of the Amarillo and Dalhart divisions on a fifty-fifty basis." An appeal to the proper tribunals of the union was made by the aggrieved parties. The tribunal of last resort set up by the Brotherhood of Railroad Trainmen in its constitution and by-laws sustained the contention of the members of the Amarillo Lodge and awarded them 100 per cent. seniority over the A. C. R. line. Thereupon a purported contract of employment was entered into between Wm. Bishop for the employees and A. B. Warner for the railway companies, giving to the members of the Amarillo Lodge full 100 per cent. seniority rights over the A. C. R. line and to the members of the Dalhart Lodge full 100 per cent. seniority rights on the Dalhart to Morse line. The said temporary injunction enjoined the· enforcement and performance of the last contract, and also the judgment and decree of the Grand Lodge Brotherhood of' Railroad Trainmen, which is the brotherhood tribunal of last resort in matters of this kind.

We are confronted at the threshold of this case with the question of a defect of parties apparent upon the face of the record. The entire membership of the Amarillo Lodge is sued neither individually nor in a representative capacity. Only four are joined as defendants. The petition discloses that these are only a part of the membership and it is not alleged that the names of the omitted parties are unknown and could not by due diligence be ascertained. Nor do any facts appear which make applicable the equitable doctrine of "parties by representation." It is apparent, we think, from the face of the petition, that the names of such parties might be ascertained by the use of diligence. Each of them supposedly has a seniority right involved here, the exact nature of which varies with each individual case and which we assume is a "property right." Of the precise question it has been said: "Plaintiffs have claimed, and their suit is founded thereon, that seniority rights upon the through runs are property rights. If so, this court cannot well make a decree which will wipe out the claimed property rights of the members of Lodge No. 421 (the Ohio lodge) without giving them an opportunity to be heard. The Dennison trainmen are probably not resident within this district, and so cannot be made parties in the instant 'action. It seems quite possible that they with the present defendants, could be joined in another district; but

whether this be correct or not, they are essential parties, and a court of equity can properly make no effective order unless they be joined as defendants. Ex parte Equitable Trust Co. (C. C. A.) 231 F. 571, 592; California v. S. Pac. Co., 157 U. S. 229, 15 S. Ct. 591, 39 L. Ed. 683." McMurray et al. v. Brotherhood of Railroad Trainmen, et al. (C. C. A.) 54 F.(2d) 923.

See, also, 24 Tex. Jur. pp. 215, et seq.; San Antonio Fire Fighters' Local Union No. 84 v. Bell (Tex. Civ. App.) 223 S. W. 506, 509; 47 C. J. 91; 63 C. J. 705.

It is perhaps well to add that no contract respecting seniority rights between either of the lodges as such and the railroad companies is alleged. On the contrary, any such rights appear from the petition to be based upon an implied personal contract which each employee has with the railroad companies, arising out of a custom or course of dealing.

The legal effect and rights of an employee holding a seniority contract with a railroad company is discussed and decided in a very interesting opinion by the Kentucky Court of Appeals in the case of Piercy et al. v. Louisville & N. R. Co., 198 Ky. 477, 248 S. W. 1042, 33 A. L. R. 322, and notes. See, also, Panhandle & S. F. R. Co. v. Wilson (Tex. Civ. App.) 55 S.W.(2d) 216.

It is vigorously contended by appellants, and we think correctly so, that the effect of the order granting the temporary injunction in question amounts to a judgment on the entire controversy in advance of a hearing on the merits. "The legitimate purpose of the temporary injunction is merely to preserve the existing condition until a final hearing can be had on the merits. The court is without authority to divest a party of property rights without a trial and any attempt to do so is void." Coffee v. Borger State Bank (Tex. Civ. App.) 38 S.W.(2d) 187, 189, and authorities there collated. The petition of appellees contains many allegations of fraud intended as a basis for setting aside both the final decree of the Grand Lodge and the subsequent contract already referred to. We have not restated these allegations here, as we deem it inexpedient and unnecessary to go into this phase of the case in advance of a hearing on the merits. Suffice it to say that the entire controversy between the parties is whether or not the said order and purported contract are valid and binding. This is all the court could pass on finally, though there is an allegation respecting and prayer for damages against the Grand Lodge, which, being a nonresident without property in Texas, may be disregarded. The status of the parties is fixed by said last order, which is presumptively valid. This status is overturned and destroyed by the injunction under discussion. The status of the parties presumably reverts back to the ex parte order of the railroads quoted above. This was not a con-

tract. The legal effect of the temporary injunction, as we view it, was a negative decree for the specific performance of a mere ex parte order of the railroads which was protested and amounted in no sense to a contract. By it every member of the Amarillo Lodge has had his seniority rights, if any, swept away without allowing him his day in court. The authorities are uniform that a controversy may not thus be decided in advance of a hearing on the merits. Bledsoe v. Grand Lodge (Tex. Civ. App.) 53 S.W.(2d) 73; Welsh v. Carter (Tex. Civ. App.) 30 S.W.(2d) 354; City of University Park v. Rahl (Tex. Civ. App.) 36 S.W.(2d) 1075; City of Farmersville v. Texas-Louisiana Power Co. (Tex. Civ. App.) 33 S.W.(2d) 271; 32 C. J. 20, and a multitude of authorities there collated.

This sufficiently disposes of the major legal issues on this appeal, but there are other matters to which we think it necessary to briefly advert.

The A. C. R. line of railroad was not made a party defendant. Respecting its status appellees allege: "That the Amarillo-Canadian River line and the Dalhart to Morse line * * * are either Texas corporations, or are constituent parts of the Chicago, Rock Island & Gulf Railway Company or of the Chicago, Rock Island & Pacific Railway Company." If the A. C. R. line is a Texas corporation and a distinct legal entity from the others, it is difficult to conceive how a valid decree can be entered affecting it pecuniarily or its property rights in the present state of the record. If its stock is owned by the Pacific Company, a nonresident, a decree entered against a mere stockholder obviously does not reach the corporation.

Again, the right to the relief sought by appellees seems to be based upon an implied contract with the Gulf and Pacific lines of railroad expressed in their petition in the following language: "Plaintiffs would further show to the court that the Pacific and Gulf Companies, have by long custom and usage and by acquiescence to the extent that the same has become and is an effectual contract agreed to employ the men of said brotherhoods according to their seniority, such seniority in disputed cases to be determined by the men and the lodges and the Grand Lodge of the Brotherhood, and by the tribunal set up by the same."

This undoubtedly refers to the old lines as they existed prior to this controversy. Did they have any contract, express or implied, which purported to cover newly constructed lines in different territory from the old, or with another corporation? None such is alleged. See Shaup v. Grand International Bro. of Locomotive Engineers, 223 Ala. 202, 135 So. 327.

We do not by what is said impliedly decide the right of a Texas court to issue an injunction against a nonresident. This particular record does not seem to demand of us a discussion of this question.

The aforesaid temporary injunction is dissolved and the judgment reversed and cause remanded.