**WEBB v. CHICAGO, R. I. & G. RY. CO.
et al.**

No. 5094.

Court of Civil Appeals of Texas. Amarillo.
Jan. 2, 1940.

Rehearing Denied Jan. 29, 1940.

H. H. Cooper and E. O. Northcutt, both of Amarillo, for appellant.

Stone & Stone, of Amarillo, Tatum & Tatum, of Dalhart, Harold C. Heiss and Horn, Weisell, McLaughlin & Lybarger, all of Cleveland, Ohio, and Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellees.

JACKSON, Chief Justice.

This suit was instituted by the appellant, J. S. Webb, in the District Court of Potter County, Texas, against the Chicago, Rock Island & Gulf Railway Company, their receivers and trustees, hereinafter called the railroads, and Albert E. McCanless, Edward G. Bertrand, William B. Foltz, Louis T. Williams and Ralph Hill, hereinafter called the individual appellees.

The purpose of the suit by appellant was to have adjudged to him and a decree to enforce certain alleged seniority rights in the Amarillo Seniority District of the C. R. I. & G. Ry. Co., which, he asserts, includes the new railroad—the American Canadian River Line—hereinafter called the A. C. R. Line, and have the railroads enjoined from transferring to said Amarillo Seniority District employees from the West El Paso Seniority District or any other division of the Rock Island Lines and from granting to them seniority over appellant and that such railroads be compelled to remove any such employees now working upon said Amarillo Division whose seniority is not equal to that of appellant or others working or entitled to work on said Division and to restrain any employee from the West El Paso Seniority District or other divisions, including the individual appellees, from working on the A. C. R. Line so long as appellant and oth-

ers are available whose seniority entitles them to work on such line and that the injunction be made perpetual.

There is no finding of fact by the court on file but as we shall set out in the opinion the material facts on which the determination of the legal questions presented depend, we deem it only necessary to make a brief statement of the pleadings which contain fifty-eight pages.

Appellant contended that he was entitled to the relief sought by virtue of an agreement dated August 15, 1926, which will later appear herein but which we here designate as the McMullen agreement; also because of the usages and customs of the railroads relative to the construction of a new line; but if mistaken as to his rights to recover upon such grounds then he says he is and was a locomotive fireman and a locomotive engineer and claims seniority by virtue of a contract made between the C. R. I. & G. Ry. Co. and the Brotherhood of Locomotive Firemen and Enginemen of which he is a member and the Brotherhood of Locomotive Engineers; that by virtue of the terms of the last contract the railroad was obligated and bound to recognize the seniority of employees engaged on the A. C. R. Line which has always been a part of the Amarillo Seniority District of the C. R. I. & G. Ry. Co.

The railroads presented pleas in abatement in which it is stated that appellant is a member of the Brotherhood of Locomotive Firemen and Enginemen, a railroad organization with a constitution, laws, rules and regulations and officers who possess authority to represent the members of the organization when disputes arise between such members or such members and the organization, or between the railroads and such organization or the members thereof; that the constitution of the organization, among other things, provides for grievance committees and other tribunals which have been created by the Brotherhood to adjust differences and establish and interpret rules of seniority; that each member agrees to abide by the constitution and laws and interpretations and decisions of such committees and tribunals when against him unless an appeal is prosecuted from such decision to the appellate tribunal of last resort, all of which, together with the procedure therefor, is set out in detail and each member when he joins the organization is inhibited from resorting to the civil courts of the country until the griev-

ance alleged is finally determined by the appellate tribunal having final jurisdiction of the complaint. The railroads also alleged that on May 1, 1925, a schedule of rules and rates for firemen and enginemen were adopted and which are still in effect and disclose that the rights of any engineer or fireman are to be determined by the regularly constituted committees of his organization; that appellant failed to comply with the provisions of such contract and have his alleged grievances so decided, and article 23, section E of such schedule, says: "No consideration will be given to grievances not presented in writing within thirty days of the occurrence." The railroads also contend that appellant failed to join in his suit some parties indispensable to the litigation.

The individual appellees filed their pleas in abatement urging misjoinder of causes of action in that some of them were members of the Brotherhood of Locomotive Engineers and others were members of the Brotherhood of Locomotive Firemen and Enginemen. They also presented a plea of misjoinder of indispensable parties for the reason that other members of the Brotherhoods not parties would be affected by the decision in this case. They pleaded the failure of appellant either as an individual or through the Brotherhoods to exhaust the remedies available to him in the constitution, laws and regulations of such Brotherhoods for the determination of the seniority rights he urges in this suit. These appellees further assert that appellant as a member of the public, independent of his relationship to such Brotherhoods, is not authorized to maintain this suit.

To the pleas in abatement the appellant filed a supplemental pleading stating that since the Brotherhoods are not parties the constitution and laws thereof are immaterial; that he is not bound by the constitution of the Brotherhood of Locomotive Engineers because not a member thereof and that the Brotherhood of Locomotive Firemen and Enginemen of which he is a member had obtained a final decision from the general grievance committee in his behalf from which there is no appeal and appellant was thereby, together with other employees so situated, entitled to enforce his seniority rights in the courts.

On a hearing had on December 22, 1938, at a regular term of the District Court of Potter County the pleas in abatement urged

by the railroads and the pleas of the individual appellees were sustained, the appellant refused to amend and his suit was dismissed, from which judgment this appeal is prosecuted.

The appellant admitted in oral argument before the court that if he had not obtained a decision from the tribunal of last resort finally concluding the controversy that the pleas of abatement should be sustained by the court; however, his position is that the record shows without dispute that the general grievance committee of the Brotherhood of Locomotive Firemen and Enginemen is the highest appellate authority on the question of his seniority and said committee had determined that the members of the local lodge at Amarillo, which we shall hereafter designate as Lodge No. 325, was entitled to perform 100% of the work on the A. C. R. Line by virtue of their seniority rights. He bases this contention on the language in a section of the constitution which creates the authority and jurisdiction of the general grievance committee of such Brotherhood. The provisions of the constitution and laws of the Brotherhood of Locomotive Firemen and Enginemen herein quoted are from the constitution and laws dated 1938 but are also contained in all the preceding constitutions and laws covering the time involved in this controversy. Subdivisions (a) and (b) of section 8, article 14, found on page 193 of the 1938 constitution, read as follows:

"Sec. 8 (a) General grievance committees shall have authority to make and interpret agreements with representatives of railway companies concerning rates of wages, rules respecting seniority rights, adjustments of grievances and other matters necessary in the interest of the members they represent. When the general grievance committee is not in session, the general chairman has authority to interpret the schedule.

"(b) General grievance committees shall have authority on their respective lines to regulate mileage in accordance with the policies of the organization for all employes in the class, or classes, of service over which they have jurisdiction. They shall also have complete jurisdiction over all matters of seniority and assignment to runs."

The appellees contend that the decision of the general grievance committee is not final and rely on other provisions of the same constitution to show that the right of appeal exists.

Determination of appellant's contention as to the final jurisdiction of the grievance committee should be approached and considered in connection with the following provisions of the constitution. Under the title "Appeals" article 18, page 258, et seq., and the subdivision designated "From Decisions on Grievances" are the following provisions:

"Sec. 4. (a) A member may appeal from a decision by the local grievance committee or its chairman, to his lodge. * * *

"(b) A member may appeal * * * from the decisions of his lodge to the chairman of the general grievance committee.

* * * * * *

"(d) A member may appeal from the decision of the chairman of the general grievance committee to the executive committee or to the general grievance committee, and may appeal from decisions of the executive committee or general grievance committee to the International President. * * *

"(e) A member may, appeal from the decision of the International President to the Board of Directors. In making his appeal to the Board of Directors, the member shall notify the International President of his appeal. * * *

"(f) All appeals from decision on grievance shall be made in the order mentioned within ninety (90) days from date each decision is made effective. Appeals not made within ninety (90) days after decision is in effect will not be entertained unless it is clearly shown that the cause of such delay was no fault of the member making the appeal.

"(g) A member may appeal to the Board of Directors from joint decision of the International President and one or more of the chief executives of the other train service organizations, unless such decision involves interpretation of law.

"(h) A lodge may appeal from a decision of a chairman of a general grievance committee, the executive committee, general grievance committee or the International President, in the manner above provided for appeals by a member.

"(i) Whenever the decision of the International President under this section involves an interpretation of the laws of the organization it shall be final unless reversed by a Convention."

Under the subdivision "Other Appeals" of the same article, section 5, is the following:

"(a) A member considering he has not received just treatment by action of a lodge, general grievance committee or legislative board, on any matter not covered in other sections of this article, may appeal to the International President. * * *

* * * * * *

"(c) An appeal may be taken from any decision of the International President to the Board of Directors on any matter properly submitted, except a decision involving an interpretation of law of the organization which shall be final unless reversed by a Convention."

Under the same article, section 7(a), is the following provision: "No member or subordinate lodge of the Brotherhood shall resort to the civil courts to correct or redress any alleged grievance or wrong, or to secure any alleged rights from or against any member, subordinate lodge or the organization, until such member or lodge shall first have exhausted all remedy by appeal, provided by the laws of the Brotherhood for the settlement and disposition of any such rights, grievances or wrongs."

The record discloses that the Rock Island Lines, for years prior to 1926, so far as necessary to a consideration of this controversy, consisted of the Chicago, Rock Island and Pacific Railway Company, a foreign corporation situated entirely outside of the State of Texas, and the Chicago, Rock Island and Gulf Railway Company, a domestic corporation located entirely within this State.

The Brotherhood of Locomotive Firemen and Enginemen had a local or subordinate lodge at Dalhart, which we shall hereafter call Lodge No. 105. The line from Tucumcari, New Mexico, to Liberal, Kansas, was known as the West El Paso Seniority District. The Brotherhood also maintained a local or subordinate lodge at Amarillo, which we shall designate as Lodge No. 325, and the line from Tucumcari, New Mexico, to Sayre, Oklahoma, was known as the Amarillo Seniority District. The members of Lodge No. 105 made no claim to seniority rights in the Amarillo Seniority District and the members of Lodge No. 325 made no claim to seniority in the West El Paso Seniority District.

On August 15, 1926, what we have designated as the McMullen agreement, and up-on which appellant primarily relies, reads as follows:

"No. 2790.      Memo of Agreement
"Amarillo, Texas, Aug. 15, 1926.

"We, the representatives of the Brotherhood of Locomotive Engineers, Brotherhood of Locomotive Firemen and Enginemen, Order of Railway Conductors, and the Brotherhood of Railway Trainmen, in conference with H. E. McMullen, Asst. Supt. Amarillo Division who states that he has the authority and is the authorized representative of the Rock Island Railway Company, to advise the Local Committee of Adjustments of the above mentioned organizations that, Amarillo Division Crews will be used to construct the new line Amarillo to Liberal exclusively, regardless of which end of the line the work is done from.

"It is also understood that in case of any construction being started out of any other point on this line, that such construction work, will be manned with Amarillo Division Train and Engine crews.

"By agreeing to the above, when the line is completed, if the Train and Engine men of the Amarillo Division decide that the Dalhart Train and Engine men are entitled to any representation due consideration will be given by the Amarillo Division Train and Enginemen to the West El Paso Division Train and Engine men. This with the understanding that Amarillo is to be the Home Terminal for the Amarillo Liberal Line.

"For the Company {H. E. McMullen
W. E. Danver A.M.M.
"B. of L. F. & E.   J. H. Devine
"B. of L. E.'   Edgar Nichols
"B. of R. T.   J. W. Vaught
"O. R. C.   L. Roy Dee "

Shortly after this instrument was signed, construction was begun on the A. C. R. Line which connects with the C. R. I. & G. Ry. Co. at Amarillo and connects with the C. R. I. & P. Ry. Co. at Liberal, Kansas. The railroad employees from Amarillo, most if not all of whom were members of Lodge No. 325, constructed 124 miles of A. C. R. Line from Amarillo toward Liberal and the railroad employees from Dalhart, most if not all of whom belonged to Lodge No. 105, constructed 24 miles of the line from Liberal, Kansas, toward Amarillo. The A. C. R. Line extending from Amarillo, Texas, to Liberal, Kansas, and the line from Liberal to Tucumcari,

New Mexico, thence from Tucumcari to Amarillo constitutes a triangle.

We herewith insert a plat that will assist in understanding the location of the towns and railroad lines involved.

what we have designated as the McMullen agreement was attacked and the material complaints and contentions upon which appellant relies in this suit, were presented in great detail relative to the manner of oper-

During the period of the construction of the A. C. R. Line, or shortly thereafter, there was built a railroad from Dalhart to Morse, a town situated on the A. C. R. Line, but the seniority rights on the last named line are only incidentally involved in this suit.

Soon after work began on the A. C. R. Line differences arose between the members of Lodge No. 105 and Lodge No. 325 relative to the seniority rights of the employees in the West El Paso Seniority District and the Amarillo Seniority District, and when operation of the line began these differences grew into a stormy and bitter dispute which has apparently accumulated momentum and become more vitriolic as the years pass.

Negotiations between the members of Lodge No. 105 and Lodge No. 325 were carried on by correspondence, conferences of special committees appointed by each of the lodges, by joint meetings between the two lodges which the railways through its proper representatives sometimes attended, all of such negotiations intended to compose the differences of the members of the respective lodges, but no agreement and no compromise or settlement of the differences ever resulted.

After approximately four years of such unsatisfactory negotiations, on June 19, 1930, Lodge No. 105 addressed to H. J. Palmer, the chairman of the general grievance committee an appeal from a decision of a lower tribunal of the order in which

ating the A. C. R. Line and the seniority rights of the members of the respective seniority districts.

On July 20th, thereafter, Lodge No. 325 answered this appeal, urged the validity of the McMullen agreement and fully presented, in effect, the claims asserted by appellant in this suit. On August 30, 1930, H. J. Palmer, the Chairman of the Executive Committee, which constitutes a part of the grievance committee, rendered a decision reciting that the men of the Amarillo Seniority District based their claim largely on the contract made August 15, 1926, herein designated the McMullen agreement, and the claims of the West El Paso Seniority District were based largely on the interpretation of article 14, section 16 of the constitution of the Brotherhood of Locomotive Firemen and Enginemen, and this conclusion was announced by Mr. Palmer: "On and after the 15th day of September, 1930 the line known as the ACR Line between Amarillo and Liberal * * * will be operated with firemen from the West El Paso District and firemen from the Amarillo District on a 50–50 basis."

█ The members of Lodge No. 105 were dissatisfied with this decision and sought the exclusive right to operate the A. C. R. Line and prosecuted an appeal to the International President of the Brotherhood of Locomotive Firemen and Enginemen. The members of Lodge No. 325 were likewise dissatisfied with the decision and

also prosecuted an appeal to the International President of the Brotherhood. On July 24, 1931, the International President, Mr. Robertson, in a lengthy decision, remanded the matter to the executive committee of the general grievance committee for further consideration. On March 17, 1937, this delay not being explained, the full general grievance committee handed down the decision upon which appellant relies, awarding the A. C. R. Line to the Amarillo employees 100% and awarding to the members of Lodge No. 105 100% of the work on the line from Dalhart to Morse. From this decision Lodge No. 105 prosecuted a second appeal to Mr. Robertson, the International President of the Brotherhood. Lodge No. 325 received and acknowledged notice that an appeal had been prosecuted but did not contend as appellant does here that the decision of the general grievance committee was final though they were furnished a complete copy of the proceedings of the appeal on May 20, 1937. On September 1, 1938, the International President of the Brotherhood rendered a written decision and modified the 1937 decision of the general grievance committee and held that the work should be on a fifty-fifty basis and affirmed the ruling formerly made by Mr. Palmer. Subsequently, the members of Lodge No. 325 voted to prosecute an appeal to the Board of Directors. The appeal was filed by the chairman of said lodge but the record shows without contradiction that such appeal was never perfected, hence, the holding of the International President is still in full force and effect and the work by the railroad is distributed on a fifty-fifty basis between the members of the respective lodges in accordance therewith. We believe that the facts recited in the light of the provisions of the constitution of the Brotherhood of Locomotive Firemen and Enginemen is conclusive against appellant's contention that the jurisdiction of the general grievance committee was final and conclusive.

The appellant testified that he was a member of the Brotherhood of Locomotive Firemen and Enginemen but was not a member of the Brotherhood of Locomotive Engineers; that he was at this time working as a fireman but had taken the examination and been promoted to the position of and had served something like two months as a railroad engineer. The appellant does not appear to seriously contend that he is authorized to recover because of any procedure had by the Brotherhood of Locomo-

tive Engineers and the constitution and by-laws of that organization prescribe the rights of the members of said lodge, the committees and tribunals thereof that have original, appellate and final jurisdiction to determine grievances. The constitution and by-laws adopted in 1936, page 107, contains the same provision relative to jurisdiction of seniority as is found in the preceding constitution and by-laws and reads as follows: "Sec. 35. (a) When a question of jurisdiction of territory or seniority arises between the members themselves or two or more Divisions that cannot be amicably adjusted by such Divisions, the question shall, with all the facts in the premises, be referred to the General Committee of Adjustment who shall rule on the matter and such ruling shall stand as a law, subject to appeal as per Section 28 of the Standing Rules."

Section 28, referred to in section 35, found on page 103, is as follows: (a) An appeal may be taken from the decision of the General Committee of Adjustment or General Chairman, to the members on the system, if schedule matter, to the system affected, if made within ninety (90) days from date of such decision, and a majority vote of all votes cast of members on the system affected, shall be final; this vote to be taken in the same manner as in the election of Division Officers. Such appeal may be taken by any member in good standing who may feel himself aggrieved, by making full statement of his case, accompanied by a statement of the General Committee of Adjustment, signed by the General Chairman and Secretary, and it shall be the duty of the proper Officers of the Division to place the seal upon it, and transmit it to the Divisions on the system affected and the Division must take the vote within thirty (30) days from receipt of notice of appeal."

Without stating in detail the facts relative to the procedure had in the Brotherhood of Locomotive Engineers to establish the seniority of the engineers at Dalhart and those at Amarillo, we think it sufficient to say that no final decision was ever rendered by the tribunal of last resort in such Brotherhood. The members of the Brotherhood of Locomotive Engineers are not permitted to resort to civil courts until they have exhausted all remedies provided for in their order.

We are of the opinion that the language under subdivision (b), article 14,

supra, that "They (referring to the general grievance committee) shall also have complete jurisdiction over all matters of seniority," gives the committee the authority to determine every issue necessary to make their decision res judicata as to the rights of the parties respecting the subject matter involved and concludes the parties until the decision is reversed or set aside by a tribunal having appellate jurisdiction over the committee and their decision. Cleveland et al. v. Ward, Judge et al., 116 Tex. 1, 285 S.W. 1063. "Complete jurisdiction" is not equivalent to "exclusive jurisdiction" and the constitution obviously contemplates the right of appeal from the decision of such committee and such decision may be reviewed, modified, reversed or affirmed.

In Grand International Brotherhood of Locomotive Engineers et al. v. Marshall et al., Tex.Civ.App., 119 S.W.2d 908, 910, writ refused, it is held:

"It is undisputed that the plaintiffs are members of and subscribers to the constitution and by-laws of said brotherhood and that whatever seniority rights they enjoy emanate from said brotherhood and are secured to them exclusively by virtue of their membership therein and not by virtue of any contract between them and any of the various railway companies mentioned. The various railway employees here involved, by joining the brotherhood and accepting the benefits thereof, thereby subjected themselves to all reasonable rules and regulations of the brotherhood as to matters within the jurisdiction thereof,. and are bound by its decisions therein so long as such decisions are in accordance with the rules thereof, and not otherwise illegal.

\*    \*    \*    \*    \*    \*

"It is a generally accepted rule in this as well as in all other states of the union that one who joins a beneficial association, such as is here under consideration, assents to and accepts the law of the order and impliedly binds himself to abide by its decisions in the determination of disputes arising within the society, and where provision is made in its constitution or by-laws for review within the society of the rulings and judgments of its officers of inferior lodges, such remedies must be exhausted before relief may be sought in a court. 5 Tex.Jur. 142; 6 Tex.Jur. 430; 5 C.J. 1364; 7 C.J. 112; Screwmen's Benev.

Ass'n. v. Benson, 76 Tex. 552, 13 S.W. 379; Sawtell v. Feser, Tex.Civ.App., 235 S.W. 960; Grand Lodge Colored K. P. v. Sanford, Tex.Civ.App., 289 S.W. 456; Fraser v. Buck, Tex.Civ.App., 234 S.W. 679; Crisler v. Crum, 115 Neb. 375, 213 N. W. 366; Henry v. Twichell, 286 Mass. 106, 189 N.E. 593."

This holding is approved in Brotherhood of Railroad Trainmen et al. v. Price et al., Tex.Civ.App., 126 S.W.2d 74, writ refused.

What we have said disposes of appellant's contention that he was entitled to maintain this suit to establish his seniority rights by virtue of a contract made between the Brotherhoods and the railroads in 1925, since he neither alleges nor proves that either he or the brotherhoods ever sought to have adjusted or determined any grievance he was entitled to assert under such contract.

The testimony is entirely insufficient to establish usage or custom of the railway company as alleged by the appellant. The evidence shows but one specific instance of the C. R. I. & G. Ry. Co. ever extending to the parties who constructed a new line the primary right to operate it.

In 42 Tex.Jur. 863, para. 28, it is said: "A usage or custom may be shown by general reputation, but not by proof of specific instances or its recognition unless they are sufficiently numerous to indicate a regular course of business."

See, also, Brousard v. South Texas Rice Co., Tex.Civ.App., 120 S.W. 587, affirmed in 103 Tex. 535, 131 S.W. 412.

In view of appellant's admission and the facts disclosed by this record we deem it unnecessary to discuss the pleas of nonjoinder and misjoinder of parties. Gordon et al. v. Hawkins, Tex.Civ.App., 66 S.W. 2d 432; Brotherhood of Railroad Trainmen et al. v. Price et al., Tex.Civ.App., 108 S.W.2d 239.

It is undisputed that the five individual appellees are among the employees that hold seniority rights in the West El Paso Seniority District; that Hill, Bertrand and McCanless are members of the Brotherhood of Locomotive Firemen and Engineers; Williams is a member of the Brotherhood of Locomotive Engineers; and Foltz is a member of both organizations. Neither Lodge No. 105 nor Lodge No. 325 are parties to the suit.

The judgment is affirmed.