## DALLAS PHOTO-ENGRAVERS' UNION NO. 38 v. LEMMON.

### No. 13149.

Court of Civil Appeals of Texas. Dallas.

Feb. 8, 1941.

Rehearing Denied March 8, 1941.

Jack Johannes and Roy E. Cogdill, both of Dallas, for appellant.

S. Austin Wier and Howard E. Moore, both of Dallas, for appellee.

YOUNG, Justice.

Appellee, J. H. Lemmon, instituted mandamus proceedings in the trial court against the Dallas Photo-Engravers' Union No. 38, to compel the setting aside of a suspension order and fifty-dollar fine, which had been theretofore assessed by defendant body. Upon a jury trial, and at the close of the testimony, both parties made request for peremptory instruction, whereupon the court dismissed the jury and granted plaintiff's motion; the judgment rendered restoring Lemmon to full membership and holding null and void the prior sentence of suspension and fine. The defendant, here appealing from such order and decree, is a trades union, organized as a voluntary, unincorporated association. It is a branch of the International Photo-Engravers Union of North America, operating under printed constitution and by-laws, with formulated rules for the conduct of its affairs. These rules provide a way of handling all accusations and charges against a member; in substance, that such shall be presented in writing to the executive board (a designated five), who shall determine if the charges are cognizable, reporting their findings to the next regular meeting of the Union; the latter body then deciding by majority vote whether the case shall be prosecuted. If the decision be affirmative, then a trial commission of seven is set up to hear the charges under given regula-

tions, and a vote of five is necessary to sustain them. This committee is empowered to pass sentence, reporting to the Union their action. The losing party may then appeal to the Union as a whole, and upon a hearing, a two-thirds vote of the members present is required to sustain the sentence, which then becomes the judgment of the local body. In any examination, trial, or appeal, the accused is entitled to counsel, who must be a member of the Union; and in chapter 1 of defendant's constitution, is provided: "This Union shall in all things be governed by the constitution and general laws of the International Union of North America * * *." Turning to the laws of the basic organization (also in evidence), we find right of appeal from the decision of a local union is assured to every member in good standing; Section 1, Article 21 thereof, reading: "Every member shall be guaranteed a fair trial on any charge or complaint filed against him and must be afforded an ample opportunity of defense and every member agrees to and is required to exhaust all remedies and resources for redress or adjustment of any complaint, grievance or charge, provided by the Constitution and General Laws before taking his case to the civil courts." Such appeal by an aggrieved member of a subordinate body shall be first to the president of the International Union, then by either party to the executive committee thereof, and, then, if need be, to the next general convention. Mr. Lemmon, when he became a member of defendant body, signed the following declaration in his dues book: "I, the undersigned, do hereby accept the Constitution and By-Laws of the International Photo-Engravers Union of North America, and hereby declare that I am fully in accordance with the rules of the same." He testified, in effect, to no knowledge of any right of appeal from the local order to the International, but Ernest Fritz, his counsel-member, in turn testified that after plaintiff's sentence had been approved by defendant, he had advised Lemmon to prosecute a further appeal to the parent organization.

The examination, trial, and appeal through the local Union's machinery occurred on and prior to September 29, 1940, the date of his ultimate suspension and fine; no attempt being made to obtain further redress, as afforded by the International constitution and by-laws. Plaintiff's application for mandamus charged, in substance, that he was arbitrarily suspended, the Union acting in bad faith, without just cause or notice, whereby he was deprived of a fair and impartial trial; that the constitution and by-laws relating to trial regulations were ignored, the proceedings being conducted in secret, thus precluding him from facing and cross-examining adverse witnesses; that all accusations were conclusively refuted, his conviction resulting alone from certain unfounded prejudices of the Union majority.

Defenses, both in pleading and fact, were that plaintiff had been accorded a fair trial, pursuant to the rules of the order, which were in evidence; raising by plea in abatement, and later in motion for peremptory instruction, the familiar proposition of law that courts will not interfere with the internal management of a voluntary association, such as a labor union, on behalf of an aggrieved member, until he exhausts all remedies within the organization. Appellee admits the general rule to be as just stated, but argues that it is unnecessary to pursue further remedies within the association (1) when fraud, oppression or bad faith is established in the initial proceedings of the local; and (2) when the internal appellate processes are inadequate to afford relief, or where appeal thereto would be futile. Plaintiff nowhere points out wherein his recourse to the International body might be inadequate, save possible delay incident to pursuing the various Union remedies, and his cause thereby becoming moot, a situation just as certainly applicable to civil litigation. Appellee's contention otherwise is no more than that the judgment of the Union was illegal and void. But this showing, without further exceptional facts, is entirely insufficient, we think, to warrant judicial interference, if organization channels are available and not appealed to. No decision in Texas jurisprudence has been more uniformly followed and cited than Screwmen's Ben. Ass'n v. Benson, 76 Tex. 552, 13 S. W. 379, 380, Judge Gaines, for the Supreme Court, there held, under facts quite analogous: "But, if there be a right of appeal, should a mandamus be awarded before that remedy has been exhausted? We think not. It seems to us that the rule that this extraordinary writ will not lie where another adequate remedy exists, applies with peculiar force to this class of cases. Members of such associations, having vol-

untarily constituted tribunals to adjust their differences, should not be permitted to resort to the courts of justice to set aside the illegal awards of such tribunals as long as there is another body which has power to reverse the sentence, and which has not been appealed to. The presumption is that .if plaintiff had appeared before the association at a proper meeting, and had taken an appeal from the sentence of the board of trustees, the sentence, if illegal,· would have been set aside. At all events, if refused, it would have been soon enough for plaintiff to have applied to this court for restitution through a writ of mandamus. If his expulsion was illegal, and if the association had refused, upon appeal, to set it aside, it may be that this court would have granted redress. We think it matters not that the order of expulsion may have been contrary to law and void, and such as this court would not hesitate to annul in case there was no appeal within the association. The point is that it was the action of the tribunal created in accordance with the constitution, and the appellee had an adequate remedy by appeal within the society itself."

Appellee's cases either cited the authority just quoted from, or affirm the general rule there stated. Referring to them, St. Louis & Southwestern Ry. Co. v. Thompson, 102 Tex. 89, 113 S.W. 144, 19 Ann. Cas. 1250, was a damage suit to which the rule is not applicable. In Brown v. Harris County Medical Soc., Tex.Civ.App., 194 S.W. 1179, and Willis v. Davis, Tex.Civ. App., 233 S.W. 1035, the association laws made no adequate allowance for relief by appeal; and in Brotherhood of Railroad Trainmen v. Price, Tex.Civ.App., 126 S. W.2d 74, writ refused, it is clearly the opinion of Chief Justice Monteith that the civil action on grounds of fraud, oppression or bad faith is cognizable after appellate .remedies of the society are exhausted and not before. Plaintiff's interpretation of the aforesaid doctrine would leave it entirely without force or meaning. In Fraser v. Buck, Tex.Civ.App., 234 S.W. 679, 684, also cited by appellee, the ruling of Chief Justice Pleasants is altogether favorable to appellant's contention here. We adopt the final paragraph of the opinion, which is decisive of this appeal: "Our conclusion is that the trial court erred in overruling the plea in abatement, and that the judgment should be reversed, and judgment here rendered dismissing plaintiffs' suit without prejudice to again appeal to the courts, after having exhausted their remedy in the association, to protect them in their rights of property or their personal rights and privileges as members or officers of the association in event such rights should be illegally invaded or denied by the action of the tribunals of the association."

Among other cases demonstrating uniform adherence to the general rule of Screwmen's Ben. Ass'n v. .Benson, supra, can be cited Sawtell v.· Feser, Tex.Civ. App., 235 S.W. 960; International Longshoremen's Ass'n, Local No. 329, v. Williams, Tex.Civ.App., 102 S.W.2d 1072; Grand International Brotherhood of Locomotive Engineers v. Marshall, Tex.Civ. App., 119 S.W.2d 908, writ refused; Webb v. Chicago, R. I. & G.﹐Ry. Co., Tex.Civ. App., 136 S.W.2d 245. The mandamus action was premature and renders unnecessary a discussion of appellant's further assignments or propositions. This cause is reversed and judgment here rendered dismissing plaintiff's suit without prejudice to his rights at law, after the stipulated association remedies have been exhausted.

Reversed and rendered without prejudice.