**TEXAS PLAINS LODGE NO. 105 OF BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN v. CLEGHORN et al.**

No. 5923.

Court of Civil Appeals of Texas. Amarillo.

Nov. 24, 1947.

Rehearing Denied Dec. 22, 1947.

Underwood, Wilson, Sutton, Heare & Boyce and Stone & Stone, all of Amarillo, and Heiss & Day, of Cleveland, Ohio, for appellant.

Reeder & Reeder, of Amarillo, for appellees.

STOKES, Justice.

This is an appeal from an order of the 47th District Court of Potter County overruling a plea of privilege filed by the appellant, Texas Plains Lodge No. 105 of the Brotherhood of Locomotive Firemen & Enginemen, hereinafter designated the Dalhart Lodge, to be sued in Dallam County, the county of its residence. The suit was instituted in the District Court by the appellees, Fenton A. Cleghorn and 38 other members of Clarendon Lodge No. 325 of the Brotherhood of Locomotive Firemen and Enginemen, all of whom are residents of

Potter County. The lodge itself was not a party to the suit but it is located at Amarillo, in Potter County, and, for convenience, the appellees will be designated as the Amarillo Lodge. Originally the defendants in the suit were the Chicago, Rock Island and Gulf Railway Company and appellant the Dalhart Lodge but, by amended pleadings, Joseph B. Fleming and Aaron Colnon, of Chicago, Illinois, in their capacities as trustees of the Chicago, Rock Island and Pacific Railway Company, were substituted for the railway companies as defendants. The plea of privilege was in due form and was duly controverted by the appellees. The plea of privilege being overruled, appellants have perfected an appeal to this court and contend, first, that the court erred in holding that appellees established a bona fide cause of action against the trustees of the railway company and that appellant was a necessary party to the suit. Secondly, they assigned error of the court in holding that the issues on which appellees' cause of action is predicated had not theretofore been fully determined by a court of competent jurisdiction and that appellees are still entitled to have those issues litigated.

The purpose of the main suit is to litigate the question of seniority as between appellant and the members of the Amarillo Lodge and to procure a decree adjusting the seniority rights between the members of the two lodges involved and requiring the trustees of the railway company to observe such rights in accordance with the final determination and adjustment thereof by the court.

The appellees alleged in their pleadings that prior to August 16, 1926, the Chicago, Rock Island and Gulf Railway Company and the Chicago, Rock Island and Pacific Railway Company determined to construct a line of railroad from Amarillo in a northeasterly direction to the City of Liberal, Kansas; that, in order to facilitate the construction of the railroad, they entered into a contract with numerous citizens of the City of Amarillo by the terms of which the railway companies agreed to employ only citizens of Amarillo as servants and operatives of the construction and service trains during the construction of the railroad and afterwards, provided the citizens of Amarillo would furnish certain portions of the right of way or funds with which to procure the same. They alleged that, in compliance with the contract, various citizens of Amarillo, including a number of employees of the two railway companies and members of the Amarillo Lodge, obtained for the railway companies the right of way and funds in full compliance with their obligations under the contract and delivered the same to the railway companies. They alleged further that the contract was made for the benefit, not only of those who were members of the Amarillo Lodge at that time, but also of all subsequent members thereof, and that, as evidence of the contract, on August 15, 1926, the railway companies, acting by and through H. E. McMullen and W. E. Danver, their duly authorized agents and representatives, executed a written instrument, designated in the record as the McMullen agreement, in which it was agreed that Amarillo division crews would be used to construct and operate the new line of railroad. They alleged that, by virtue of the terms of the contract, the members of the Amarillo Lodge became entitled to all of the seniority rights on the new line of railroad; that the line of railroad was constructed by the railway companies under four authorizations, the first being from Amarillo to the Canadian River, the second from the Canadian River to the town of Stinnett, in Hutchinson County, the third from Stinnett to Gruver, Texas, and the fourth from Gruver to Liberal, Kansas; and that, in recognition of the McMullen agreement, the railway companies confined their employees and operatives of the trains to citizens of Amarillo until about the first of April, 1929. They alleged that, about that time, the construction of the fourth authorization, from Gruver to Liberal, was begun and that, in total disregard of the McMullen agreement, the railway companies employed residents of Dalhart and members of the Dalhart Lodge to operate construction trains over the new line out of Liberal. Appellees further alleged that they were entitled to the full seniority rights over the new line of railroad under the terms of the McMullen agreement but that, on account of the actions of the railway companies in employ-

ing members of the Dalhart Lodge as operatives of their trains on the new line, a controversy arose between the railway companies and the members of the two lodges, the Dalhart Lodge claiming that its members were entitled to participate in such seniority rights, and that in the month of August, 1929, the chairmen of the lodges participated in a meeting held for the purpose of adjusting the differences between the members of the two lodges. They alleged that no agreement could be reached between them and that A. E. Walker, the general superintendent of the new railroad line, who attended the meeting, announced that operating crews from both lodges would be assigned to the new line of railroad on a basis of 50% each, which would result in an equal division between them of the seniority rights. Appellees alleged that they were not satisfied with Walker's decision and that, in compliance with the provisions of the constitution of the brotherhood, they perfected an appeal and successive appeals to various officers and committees until the judicial machinery provided by the constitution had been exhausted; that the International Board of Directors was the tribunal of last resort and, when their appeal reached it, the Board wrongfully and arbitrarily dismissed the appeal upon the ground that it had not been properly perfected. They alleged further that the International President, who constituted the judicial authority immediately below the Board of Directors, decided the controversy in accordance with the Walker decision, that is, 50% of the seniority rights to the members of each lodge, and that appellants and the trustees of the railway company have since been, and are now, acting in accordance therewith as though the controversy has been finally adjudicated. They alleged that, having exhausted all of the judicial procedure provided by the constitution of the brotherhood, they now have the right to institute this suit.

■■■ As we have said, appellant contends, first, that appellees have not established a bona fide cause of action against the trustees, Fleming and Colnon. The suit was filed in the District Court of Potter County under Subdivisions 3 and 29a of Article 1995, Vernon's Ann.Civ.St. Subdivision 3 provides that if one or all of several defendants reside without the state or if their residence is unknown, suit may be brought in the county in which the plaintiff resides. It was stipulated upon the trial that the trustees, Fleming and Colnon, were residents of the State of Illinois. The record shows they are in charge of and, as trustees, are operating the line of railroad involved in the suit. The record shows that the railway company and the trustees observe the decisions and adjustments of such matters as seniority rights that are made by the constitutional tribunals of the brotherhood and that the trustees are observing the decision of the International President under the theory that his decision was the final and binding one in the series of appeals because no appeal was perfected from it to the Board of Directors. The constitution of the brotherhood provides for an appeal from his decision to the Board of Directors and, if the Board of Directors was correct in dismissing appellee's appeal, then the decision of the International President became final and the question of whether or not appellees are entitled to the full seniority rights under the McMullen agreement has been finally adjudicated. In our opinion, appellees have alleged a bona fide cause of action against the trustees upon the McMullen agreement and upon the question of whether or not the Board of Directors was justified in dismissing their final appeal because, if the board was not justified in dismissing it, then appellees have the right to adjudicate their controversy in the courts and, unless they do so, and procure a judgment in their favor, the seniority rights to which they contend they are entitled under the McMullen agreement will continue to be divided between them and the members of the Dalhart Lodge. The mere fact that the railway companies and the trustees are accustomed to observing the final adjudication of such controversies among labor organizations by the committees and other authorities provided by the constitution of the brotherhood does not deprive appellees of the right to bring suit against them nor destroy any cause of action they might have. The trustees constitute the source from which the seniority rights are derived and,

if they were not made parties to the suit, judgment against the appellant alone would not reach the substance of the controversy.

■■ Appellant next contends the appellees did not establish that it was a necessary party to the suit as required by Subdivision 29a of Article 1995, Vernon's Ann. Civ.St. Under that subdivision appellees were required to show that appellant was a necessary party to the suit, that is, after establishing a bona fide cause of action against the parties whom they are entitled to sue in Potter County under Subdivision 3, Article 1995, they must go further and establish a cause of action of such a nature as that a proper adjudication of the subject matter cannot be had without the presence before the court of appellant, the nonresident defendant. Moore v. Hoover, Tex. Civ.App., 150 S.W.2d 96; First Nat. Bank in Dallas v. Pierce, 123 Tex. 186, 69 S.W. 2d 756. We think what we have already said clearly shows that no proper adjudication of the cause of action asserted by appellees could be had unless appellant was a party to the suit. Its members are now enjoying 50 percent of the seniority rights which constitute the subject matter of the suit and to which appellees contend they are entitled. The appellees have shown a bona fide cause of action against the trustees of the railway company under a written contract between them and railway companies now represented by the trustees. If a judgment should be procured by them against the trustees, requiring the latter to accord to appellees the full seniority rights as claimed by them under the McMullen contract, it would not have the effect of taking those rights from the members of the Dalhart Lodge unless they, or the lodge itself, were parties to the suit and appellees would be required to file and prosecute another suit against the lodge or its members before they would be entitled to the fruits of their victory in the suit against the trustees.

While it is true, as contended by appellant, that neither appellant nor any of its members were parties to the McMullen agreement, that agreement involved the subject of the controversy in this suit and it was a proper subject for adjudication by the judicial tribunals provided by the constitution of the brotherhood. Both appellant and the appellees are bound by the constitution and by the final adjudications of the tribunals set up by it. The matter of the seniority rights has been adjudicated by those tribunals and the final decision upon the merits of the controversy concerning them was in favor of the appellant. Thus it will be seen that, while neither the appellant nor any of its members were parties to the McMullen agreement, by the unique situation presented by the record, they have acquired rights which constitute its principal subject matter and to which the appellees contend neither appellant nor its members are entitled. Having acquired them through a process by which, unless set aside by the courts, both appellees and appellant are bound, it is clear that appellant is a necessary party to the suit.

■ Appellants present another contention that the appellees were not entitled to maintain the suit against them in Potter County because the cause of action asserted by them has been determined against their contention by a court of competent jurisdiction in this state and they are not entitled again to have the issues litigated. A suit involving some of the issues was filed and prosecuted through the courts by J. S. Webb and was finally decided on January 2, 1940, by this court in the case of Webb v. Chicago, R. I. & G. R. Co., Tex.Civ.App., 136 S.W.2d 245. Appellants introduced in evidence in the trial of the instant case the pleadings and orders entered by the trial court in the Webb case, the opinion of this court and a stipulation that an application for a writ of error was refused by the Supreme Court. The question of whether or not the controversy has been adjudicated or whether appellees are precluded by the final adjudication of the Webb case are matters of defense and not a proper subject matter for adjudication in the trial of a controversy involving only a plea of privilege. They pertain only to the merits of the cause of action and have no proper place in a proceeding involving only a plea of privilege and the question of venue. Bradley v. Trinity State Bank, 118 Tex. 274, 14 S.W.2d 810; Vitopil v. Gray, Tex. Civ.App., 111 S.W.2d 1202.

The same situation is presented by the brief of Fleming and Colnon, trustees. They assert that the McMullen contract was void, or at least subject to termination at the will of either party to it, because it established a perpetuity and purported to establish contractual rights of persons not yet born. This, likewise, goes to the merits of the case and is not a proper element of a controversy involving only the question of venue.

We have carefully examined all of the contentions presented by the briefs and, in our opinion, none of them reveals reversible error. The judgment of the court below will therefore be affirmed.