The Honorable Frank J. Willems State Representative Route 3 Paris, AR 71855
Dear Representative Willems:
This is in response to your request for an opinion concerning the possibility of a conflict of interest in the following situations:
 1. County Judge's appointee serving on the ARVAC Board whose wife is a County Librarian hired by the Library Board with the Board appointments being made by the County Judge.
 2. An elected Justice of the Peace whose wife has been appointed to the Library Board by the County Judge. A Justice of the Peace votes to appropriate funds to the Library and confirms appointments.
 3. An elected Justice of the Peace serving as President of the Senior Citizens Center and entering into written agreements with the county for services. A Justice of the Peace votes to appropriate funds to the Senior Citizens Center.
 4. An elected Justice of the Peace being employed full time by the Arkansas Game and Fish Commission as an Officer while receiving compensation from the State of Arkansas.
 5. An elected Justice of the Peace being employed by a school system. A Justice of the Peace votes to appropriate funds for offices that a school is directly responsible for payment for that office through direct payments through tax settlements.
 6. Should you find that a conflict of interest for the aforesaid persons or situations should exist, please give your opinion concerning the proper steps to alleviate such conflict.
The county ethics law (A.C.A. 14-14-1202 (Supp. 1987)) must be considered with regard to the first situation posed in your request, wherein it states:
 The holding of public office or employment is a public trust created by the confidence which the electorate reposes in the integrity of officers and employees of county government. an officer or employee shall carry out all duties assigned by law for the benefit of the people of the county. The officer or employee may not use his office, the influence created by his official position, or information gained by virtue of his position to advance his individual personal economic interest or that of an immediate member of his family or an associate, other than advancing strictly incidental benefits as may accrue to any of them from the enactment or administration of law affecting the public generally.
A.C.A. 14-14-1202(a) (Supp. 1987)
Member[s] of county boards are included within the definition of "officers and employees of county government" for purposes of14-14-1202(a) (Supp. 1987). A.C.A. 14-14-1202 (b) (Supp. 1987). Thus, a conflict might arise if the County Judge's appointee to the ARVAC Board used his office or influence created thereby to secure his wife's employment by the Library Board. It is my opinion, however, that the appointments made by the County Judge do not themselves give rise to an unlawful conflict of interest.
The following language contained in 14-14-1202(c)(1) (Supp. 1987) should also be considered:
 (c) Rules of Conduct. No officer or employee of county government shall: (1) Be interested, either directly or indirectly, in an [any] contract or transaction made, authorized, or entered into on behalf of the county or an entity created by the county, or accept or receive any property, money, or other valuable thing, for his use or benefit on account of, connected with, or growing out of any contract or transaction of a county. If, in the purchase of any materials, supplies, equipment, or machinery for the county, any discounts, credits, or allowances are given or allowed, they shall be for the benefit of the county. It shall be unlawful for any officer or employee to accept or retain them for his own use or benefit.
The applicability of 14-14-1202(c)(1) in this instance will turn on the particular facts and circumstances surrounding the county librarian's employment. There are no cases construing this provision. This will essentially involve a factual question which this office cannot answer.
It must be initially recognized, in reference to the second situation, that relationship by affinity or consanguinity to the appointing power or members or thereof ordinarily is not a basis for disqualification from public office or employment. 67 C.J.S. Officers 23 (1978). Rather this is a matter to be addressed by statute. Id.
While there appear to be no Arkansas cases directly on point, it is my opinion that the action of the Justice of the Peace in confirming the appointment does not in itself contravene14-14-1202(a) (county ethics law) in the absence of some showing that the Justice of the Peace "(used) his office, the influence created by his official position, or information gained by virtue of his position" to obtain his wife's appointment by the County Judge. See A.G. Op. No. 88-357, copy enclosed. It is significant to note in this regard that 14-14-1202 is a penal provision, and as such must be strictly construed. Austin v. State, 259 Ark. 802,536 S.W.2d 699 (1976); Knapp v. State, 283 Ark. 346,66 S.W.2d 433 (1984). It is therefore my opinion that a court would be unwilling to read a general nepotism prohibition into the language of this provision. Such an intent could easily have been clearly expressed.
Nor, in my opinion, would the Justice of the Peace's vote to appropriate funds to the Library generally fall within the county ethics prohibition. See generally, Op. No. 88-357, copy enclosed. As indicated in that opinion, however, prudency dictates that the Justice of the Peace refrain from participating in decisions focused more narrowly upon his wife's personal pecuniary interest.
I have enclosed a copy of Opinion Number 86-267 which offers some guidance with regard to the third factual scenario. It was concluded therein that there is no conflict when a city councilman who is also a manager for a state school for the handicapped votes to blacktop a road around the school. We determined that the councilman's interest in that situation would fail to present a direct pecuniary interest, distinct from the public interest. Op. No. 86-267, p. 2.
It may similarly be concluded that the interest of the Justice of the Peace in any agreements in this regard as President of the Senior Citizens Center does not implicate the type of pecuniary interest that suggests an unlawful conflict of interest. The Justice of the Peace is prohibited under 14-14-1202(c)(1) from being interested "either directly or indirectly" in any contract entered into on behalf of the county. His interest as President of the Senior Citizens Center does not, however, in my opinion fall within this prohibition, which is reasonably directed toward the county officer's personal interest and not his interest as a member of a class.
The fourth situation involves the employment of a Justice of the Peace as an officer of the Arkansas Game and Fish Commission. This situation may pose a conflict under Article 4, Section 2 of the Constitution of Arkansas which states:
 No persons, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
There are very few cases construing this constitutional provision. The Arkansas Supreme Court has held, however, that a Justice of the Peace cannot also hold the office of State Treasurer (State v. Hutt, 2 Ark. 282 (1940)) or deputy sheriff (State Bank v. Curran,10 Ark. 142 (1849)). These officers belong to separate departments of government, according to the court's reasoning; and, therefore, simultaneous service in both is precluded under Art. 4, 2.
It may, similarly, be successfully contended that the Justice of the Peace's service as an officer of the Game and Fish Commission is unconstitutional since the Game and Fish Commission clearly falls within the executive department of government and the Justice of the Peace exercises either legislative or judicial powers. This is, however, ultimately a question for the judiciary, as indicated under A.C.A. 14-14-1309. Upon the quorum court's declaration of a vacancy, pursuant to 14-14-1308(12) and14-14-1309, the affected officer may appeal to circuit court. See A.C.A. 14-14-1309(b).
It is my opinion that the same reasoning would apply to the fifth situation as with regard to the third situation above. The nature of the interest does not, in my opinion, raise an unlawful conflict of interest issue, in the absence of facts implicating the Justice of the Peace's own pecuniary interest.
Our discussion of the fourth situation may be referenced in response to your final question. Ordinarily, if a person cannot hold two offices at the same time, the acceptance of the latter vacates the former. State Bank v. Curran, supra. The particular procedures established under A.C.A. 14-14-1309 should, however, be considered. The quorum court must determine whether a vacancy exists, through the process of resolution. A.C.A.14-14-1309(a)(2). As previously indicated, the officer so affected may appeal to circuit court within thirty days "from the date of publication as required for county resolutions." A.C.A.14-14-1309(b)
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Attachment to 89-044
Opinion No. 88-357
February 17, 1989
The Honorable Robert W. Tullis State Representative Box 277 Mineral Springs, AR 71851
Dear Representative Tullis:
This is in response to your request for an opinion on the following questions:
 1. May a county quorum court member participate in the filling of a vacancy in a county elective office, if one of the persons being considered to fill the vacancy is a relative of the quorum court member?
 2. If a county quorum court member is related to another elected official of the county, may the quorum court member participate in matters relating to his relative's office, such as budgetary matters?
Arkansas Code Annotated 14-14-1202, the county ethics law, must be initially considered in response to these questions. Subsection (1) of 14-14-1202 states as follows:
 The holding of a public office or employment is a public trust created by the confidence which the electorate reposes in the integrity of officers and employees of county government. An officer or employee shall carry out all duties assigned by law for the benefit of the people of the county. The officer or employee may not use his office, the influence created by his official position, or information gained by virtue of his position to advance his individual personal economic interest or that of an immediate member of his family or an associate, other than advancing strictly incidental benefits as may accrue to any of them from the enactment or administration of law affecting the public generally.
In response to your first question, while it is my opinion that the mere participation in the voting process would not fall within the actions prescribed under 14-14-1202(a), a conclusive determination would require a review of the particular circumstances in order to establish whether the quorum court member "[used] his office, the influence created by his official position, or information gained by virtue of his position to advance [the] economic interest . . . of an immediate member of his family." Such a factual review is not within the province of this office.
The issue will also turn on whether the relative is "an immediate member" of the quorum court member's family. There is no definition of this phrase under 14-14-1202. However, another ethics provision enacted by the General Assembly states: "no public official or state employee shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship." See A.C.A. 21-8-304(a). This provision may be relied upon by analogy as offering guidance in construing the phrase "an immediate member of his family" under A.C.A.14-14-1202(a). See, e.g., Stibling v. U.S., 419 F.2d 1350 (8th Cir. 1969).
It is my opinion that the answer to your second question is, generally, "yes." This is particularly true if, for instance, the budget only incidentally contains the salary of an immediate family member. However, prudency dictates that the quorum court member refrain from participating in decisions that are focused more narrowly upon the personal economic interest of the family member.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Second attachment to 89-044
OPINION NO. 86-267
August 18, 1987
Honorable Ed Gilbert State Representative P.O. Box 633 Mt. Home, Arkansas 72653
Dear Representative Gilbert:
This is in response to your letter of July 16, 1985, wherein you requested an opinion on whether a conflict of interest arises when a city councilman votes on issues which relate to his private employment. Your letter provides four specific situations which were supplied by Mr. Charles Maas. These examples include:
 I. Is there a conflict where a councilman who is also a manager for a State school for the handicapped votes to blacktop a road around the school;
 II. Is there a conflict where a city councilman who also is employed by the State Mental Health Department votes against a land tax to be placed on the property of the State Mental Health Department;
 III. Is there a conflict where a city councilman who is also an employee of a State nursing home votes against a raise in water and sewage costs due to the fact that the nursing home would use large amounts of water;
 IV. Is there a conflict where a city councilman who is also self-employed as a builder and developer votes on issues which pertain to the subdivision code?
Generally, an officer would be disqualified from participating in a decision when he has a personal interest which might interfere with the unbiased discharge of his duty to the public. Our Supreme Court held in Van Hovenberg v. Holman, 201 Ark. 370,144 S.W.2d 719, (1940), that no member of a city council may vote on any question involving his own pecuniary interest, if that is immediate, particular, and distinct from the public interest. However, a member is not disqualified where his interest is only as a member of a class.
The Van Hovenberg case dealt with a member of the city council who voted to grant a permit to an oil company to build and operate a filling station on a lot owned by said councilman. Previous requests for a permit made by other land owners on the same street to erect a filling station had been objected to by this councilman. Also, the councilman had secured a ten year lease with an option to purchase the station in question from the oil company. In holding the councilman incompetent to vote, the Supreme Court stated:
 It would be inconsistent if the law were that the collector of an improvement district, and a bridge district commissioner, could not profit through transactions with the districts, but an alderman could disregard the ordinances he has sworn to uphold by illegally constructing a filling station, and then consummate his plan to lease it by adding his vote to three others. . . .
Id. at 375.
Based on the above case, it is my opinion that there is no conflict with a councilman votes to blacktop a road around a school for the handicapped, votes against a land tax to be placed on property of the state or votes against a raise in water and sewage costs due to the fact that any interest by such councilman would fail to present a direct pecuniary interest that was distinct from the public. This reasoning also applies to your fourth example involving a self-employed builder and developer; however, whether or not a conflict arises would depend upon the specifics of the situation.
It is also important to note that Arkansas law prohibits a member of the city council from being interested, directly or indirectly, in the profits of any contract or job for work or services to be performed for the city. Ark. Stat. Ann. 19-909 (Repl. 1980).
Accordingly, I conclude that a council member need not disqualify from service if the primary benefit of his action flows directly to another with no direct pecuniary interest that is separate and distinct from the public flowing to the member.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Connie Griffin.